No. 23-469

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN HOLCOMB,

Defendant-Appellant.

---

On Appeal from United States District Court
Western District of Washington at Seattle
District Court Case No. CR21-075-RSL
The Honorable Robert S. Lasnik
United States District Judge

---

**DEFENDANT-APPELLANT'S OPPOSITION TO PETITION FOR
REHEARING EN BANC**

---

Colin Fieman
Alan Zarky
Attorneys for John Holcomb
Federal Public Defender's Office
1601 5th Avenue, Suite 700
Seattle, WA 98101
(206) 553-1100
colin_fieman@fd.org
alan_zarky@fd.org

# TABLE OF CONTENTS

Table of Authorities ................................................................................. ii

Introduction ........................................................................................... 1

Statement of Facts .................................................................................. 2

    I.    The allegations and the investigation ......................................... 2

    II.   The decisions below finding multiple Fourth Amendment violations ...... 5

Argument ................................................................................................ 8

    I.    The conclusion that the good-faith exception does not apply to the multiple and fundamental constitutional violations is not only consistent with precedent, but compelled by it. ....................................... 8

         A.   The decision is compelled by precedent finding no good faith when there is a "bare-bones" affidavit. ............................................. 8

         B.   The opinion's finding of no good faith given the warrant's overbreadth is consistent with precedent. ....................................... 10

         C.   The government's other attempts to establish good faith fail ......... 14

    II.   The disagreements noted in the partial concurrence are factual, the panel decision was correct, and no evidentiary hearing is needed to conclude the search cannot be justified under the warrant's other provisions ........................................................................................ 17

    III.  The search was invalid and not subject to good faith for an additional reason not addressed by the panel: once officers viewed the exculpatory video, probable cause had so diminished they had to stop searching, absent further judicial authorization. ......................... 18

Conclusion ............................................................................................ 19

Certificate of Compliance ..................................................................... 20

## TABLE OF AUTHORITIES

**Cases**                                                          **Pages**

*Andresen v. Maryland*, 427 U.S. 463 (1976) ........................................................ 15

*Davis v. United States*, 564 U.S. 229 (2011) ..................................................... 16

*Demaree v. Pederson*, 887 F.3d 870 (9th Cir. 2018) ............................................ 12

*Herring v. United States*, 555 U.S. 135 (2009) ..................................................... 16

*Hope v. Pelzer*, 536 U.S. 730 (2002) ........................................................... 12, 13

*United States v. Adjani*, 452 F.3d 1140 (9th Cir. 2006) ........................................ 12

*United States v. Artis*, 919 F.3d 1123 (9th Cir. 2019) ............................................ 16

*United States v. Comprehensive Drug Testing, Inc.*,
  621 F.3d 1162 (9th Cir. 2010).............................................................................. 12

*United States v. Dozier*, 844 F.2d 701 (9th Cir. 1988) ........................................... 16

*United States v. Grant*, 682 F.3d 827 (9th Cir. 2012) ............................................. 9

*United States v. Grubbs*, 547 U.S. 90 (2006) ....................................................... 18

*United States v. Holcomb*, 132 F.4th 1118 (9th Cir. 2025) ........................... passim

*United States v. Johnston*, 789 F.3d 934 (9th Cir. 2015) ..................................... 10

*United States v. King*, 985 F.3d 702 (9th Cir. 2021) ............................................. 10

*United States v. Kirilyuk*, 29 F.4th 1128 (9th Cir. 2022) ........................................ 11

*United States v. Kow*, 58 F.3d 423 (9th Cir. 1995) ................................ 7, 13, 15, 16

*United States v. Leon*, 468 U.S. 897 (1984) ........................................................ 8, 9

*United States v. Luong*, 470 F.3d 898 (9th Cir. 2006) ............................................. 9

*United States v. SDI Future Health Inc.*, 568 F.3d 684 (9th Cir. 2009) .... 11, 14, 15

*United States v. Schesso*, 730 F.3d 1040 (9th Cir. 2013) ..................................... 11

*United States v. Shi*, 525 F.3d 709 (9th Cir. 2008) ............................................... 10

*United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986) .................................. 14, 15

*United States v. Underwood*, 725 F.3d 1076 (9th Cir. 2013) .................................. 9

## INTRODUCTION

The Government's petition should be denied because the panel decision is a narrow one, applying long-standing precedents to case-specific facts that establish flagrant disregard by the police of core Fourth Amendment requirements. The real impetus behind this petition is revealed on its first page: instead of identifying a question of exceptional importance or precedents from which the decision supposedly diverges, the Government objects that "[i]f this opinion stands, a child rapist will walk free." Pet_6. But as the panel explained, even for a "despicable crime," under the facts of this case, "respect for the Constitution and the rule of law requires" suppression. *United States v. Holcomb*, 132 F.4th 1118, 1123 (9th Cir. 2025).

In trying to recast the decision as one involving "a new legal standard" (Pet_17), the Government disputes or omits factual findings, misconstrues the decisions below, and misstates the law. It then asks this Court to depart from its precedents by, as it conceded below, authorizing "the state to open and examine any [computer] file from any time period," when there was no probable cause to do so and in defiance of decades of law that prohibits general searches. 132 F.4th at 1128, 1131. While the Government may take the view that the ends justify the means because of the underlying crime, the petition should be denied.

## STATEMENT OF FACTS

### I. The allegations and the investigation

On January 28, 2020, John Holcomb asked the police to remove a woman known as "JJ" from his house because she was "acting crazy[.]" ER-97. JJ then falsely alleged that, after multiple consensual sexual encounters over the preceding days, she and Holcomb engaged in an act of oral sex that started consensually but became non-consensual. ER-82–84. She provided numerous explicit details about how she was supposedly assaulted.

Holcomb told officers there was a video of the encounter that would exonerate him. ER-107, 119, 121. He "provided officers with his computer password, and told them how to find and play the video." 132 F.4th at 1123.

The police obtained a warrant to search Holcomb's computer and cellphone for the video and certain other digital evidence between January 26, 2020, and February 4, 2020 (thus tied to the rape allegation), and for communications between June 1, 2019, and February 4, 2020 (the time Holcomb and JJ had been communicating prior to the allegation). ER-77.

The warrant also authorized searching for and seizing evidence of "dominion and control." ER-77. However, the "affidavit underlying the []warrant set forth no grounds to find probable cause to conduct a search…for dominion and control evidence" because, "apart from the portion of the affidavit restating the dominion and control provision, [it] does not otherwise mention dominion or

control." 132 F.4th at 1128. This is likely because "evidence of dominion and control was not at all relevant to the state's investigation of the alleged assault." *Id.* at 1126.

The dominion-and-control provision did not contain a time limitation, but consistent with the time limitations in the rest of the warrant, Detective Adrian Kuschnereit used forensic software to search Holcomb's phone for items "that were covered under the time constraints of [the] search warrant." ER-138. The software relies on internal computer metadata, which accurately records the date and time a video or other file was created, independently of the date and file labels displayed by Windows or other operating systems. 132 F.4th at 1127 n.5. This enabled Kuschnereit to filter the data on the phone, including video files, to exclude data outside the relevant time period. *Compare* ER-138 *with* ER-77.

Two weeks later, Detective Duane Neufeld, also "trained as a digital forensic examiner" (Pet_10), conducted a forensic examination of Holcomb's computer. He located and viewed the video of Holcomb and JJ having oral sex. He reported that "[JJ] looked like she was fully participating" and that the video refuted her complaint in multiple specific ways. ER-142–43.

The next morning, Kuschnereit met with Neufeld and a deputy prosecuting attorney, played the video, and concluded that JJ "does appear to be willingly performing oral sex on HOLCOMB" and "[a]t no point in the video clips [he] saw

3

did [he] observe HOLCOMB appearing to restrain [JJ] forcibly." ER-143. That same morning, police notified the State Crime Laboratory, which had been asked to conduct DNA testing, that "this morning we just located some additional exculpatory evidence so it sounds like this case will be dismissed." ER-150.

Beyond the video itself, "the state observed nothing in the evidence that supports an allegation involving forcible sexual contact." ER-79; *see also* ER-136 ("the original charges related to the rape were dismissed…upon discovery of video files documenting the event that were different than that reported"); ER-151 (based on the exculpatory videos, the prosecutor "elected not to move forward with charges against Mr. Holcomb at that time.").

Despite the exculpatory evidence and dismissal decision, Neufeld not only resumed searching Holcomb's computer but expanded his search far beyond the dates in the warrant. "Rather than use an available computer program that would have allowed him to filter the computer's files by date and time or to otherwise limit his search to the period surrounding the alleged assault, the examiner 'pull[ed] up all [the] videos' and 'start[ed] just scrolling through [them].'" 132 F.4th at 1124. Neufeld even watched multiple videos of Holcomb and a longtime girlfriend (not JJ) having consensual sex on occasions years before the allegations Neufeld was supposedly investigating. *Id.*

This new search included a video file with metadata establishing it was from 2014, five years before the period set forth in the warrant. *Compare* ER-192, 64 *with* ER-77. Neufeld opened and played the video anyway. It appeared to depict an adult male having sex with a prepubescent female, later identified as Holcomb's daughter. ER-149, 155. Only after finding this video did Neufeld stop searching the computer; police applied for a new warrant, this time searching for child pornography. ER-155, 197.

State authorities charged Holcomb with rape of a child and related charges. Those charges were dismissed after Holcomb moved to suppress. After the dismissal, the state prosecutor asked a federal prosecutor for assistance: "Can you think of ANY legitimate argument to try to salvage this?" ER-157. The AUSA responded that he could not. ER-67.

## II. The decisions below finding multiple Fourth Amendment violations

The district court found that dominion and control of Holcomb's devices was irrelevant to the investigation, ER-40 n.7; there was no probable cause to search for evidence years before the alleged assault, ER-39–40; the warrant's dominion-and-control provision was overbroad and lacked particularity, ER-39–41; and "the dominion and control clause of the warrant was so facially deficient that no executing officer could reasonably presume it to be valid," rendering the

good-faith exception inapplicable, ER-43. Accordingly, it granted the motion to suppress.

The Government moved for reconsideration, arguing the standard in civil qualified-immunity cases should apply in determining "good faith." The court granted the motion on the issue of good faith, while reaffirming its finding that "law enforcement violated defendant's Fourth Amendment rights." ER-18.

The Government has effectively abandoned its "qualified immunity" argument. In any event, the panel concluded the dominion-and-control provision's overbreadth meant "the good-faith exception does not apply under either [the *Leon* or qualified-immunity] standard." 132 F.4th at 1133. Contrary to Pet_6, the panel did not hold that the warrant was invalid simply "because it contained a 'dominion and control' provision without date restrictions[.]" Rather, it specified it was not holding that date restrictions were always required, *id.* at 1130, and instead found this search unconstitutional because of multiple Fourth Amendment violations.

Like the district court, the panel unanimously concluded the affidavit "set forth no grounds to find probable cause to conduct a search—much less a limitless search—for dominion and control evidence." *Id.* at 1128. "[E]vidence of dominion and control was not at all relevant to the state's investigation," and the affidavit does not mention it apart from listing it among the types of evidence subject to seizure. *Id.* at 1126, 1128.

The panel also concluded that, even if there had been probable cause to search for dominion-and-control evidence, the provision in this particular case would pass constitutional muster only if linked to the time period relevant to the investigation, rather than a general search authorization. Instead, the warrant gave officers "unfettered discretion" to, as the Government conceded, "open and examine any file from any time period, including files that long predated the alleged assault." *Id.* at 1128, 1129. And because the dominion-and-control provision also lacked particularity, it was invalid "twice over[.]" *Id.* at 1131.

Noting that the Court has long been "vigilant in scrutinizing officers' good faith reliance on…illegally overbroad warrants," *id.* at 1134 (quoting *United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995)), the panel concluded the good-faith exception does not apply when an officer relies on a warrant that purportedly authorizes examining records for which there has been no showing of probable cause *at all*, and that compounds the violation by authorizing searches of files from time immemorial, despite the investigation's time-limited scope.

In a partial concurrence, Judge Sung agreed the dominion-and-control provision was "constitutionally infirm," 132 F.4th at 1135, but suggested it was severable and that additional facts pertaining to plain view should be determined after a remand. *Id.* at 1135–38.

7

## ARGUMENT

I.    **The conclusion that the good-faith exception does not apply to the multiple and fundamental constitutional violations is not only consistent with precedent, but compelled by it.**

    A.    **The decision is compelled by precedent finding no good faith when there is a "bare-bones" affidavit.**

Implicitly conceding the constitutional violations in this case, the Government seeks en banc review of whether the "good faith holding diverges from precedent." Pet_16. But its petition consists almost entirely of disagreements with factual findings and misstatements of law, and even the Government acknowledges that "factbound good-faith determinations" do not "ordinarily warrant en banc review[.]" Pet_7. Far from creating a "new legal standard," Pet_17, the panel decision adheres to well-established precedent; it is the Government that is angling for a new legal standard permitting general warrants for data searches.

More specifically, the Government does not dispute that the affidavit "set forth no grounds to find probable cause to conduct a search" for dominion-and-control evidence. 132 F.4th at 1128. Indeed, the affiant's probable cause recitation didn't even mention dominion-and-control evidence. *Id.* This alone is sufficient to negate any claim to "good faith," since the exception does not apply when an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984)

8

(i.e., a "bare-bones" affidavit); *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013). That is just what the panel found here: the affidavit wasn't just bare bones, there were no bones at all. 132 F.4th at 1126–27.

The petition completely ignores this initial holding by the panel, which surely does not warrant en banc review. Instead, it focuses on the panel's alternate holding that, even if there had been a showing of probable cause, the warrant was overbroad.

While the petition focuses on the absence of precedent specifically addressing dominion-and-control provisions, suppression does not require a precise match in precedent to the type of evidence at issue. This Court has found an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," 468 U.S. at 923, based on how apparent the lack of probable cause is, not on the type of evidence sought. *See, e.g.*, *United States v. Grant*, 682 F.3d 827, 836 (9th Cir. 2012) (rejecting good faith because affidavit "does not set out any plausible connection" between location at issue and the crime, not because of precedent involving guns); *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006) (no good faith because affidavit "contains no appreciable indicia of probable cause," not because of specific precedent regarding evidence of methamphetamine manufacturing); *Underwood*, 725 F.3d at 1085 (no good faith when affidavit "fails to provide a colorable argument for probable cause," not

9

because of specific precedent regarding evidence of drug trafficking). The panel's rejection of good faith fits comfortably within this precedent: the affidavit was devoid of probable cause for dominion-and-control evidence, and doubly so for dominion-and-control evidence years outside the relevant time period.

In short, the panel's holdings weren't based on anything unique about dominion-and-control provisions. They were about the singular breadth of the search, encompassing every file on the computer, coupled with the singular lack of probable cause to support it, each of which on their own precludes appeals to the good-faith exception.

### B. The opinion's finding of no good faith given the warrant's overbreadth is consistent with precedent.

The Government contends, almost in passing, that the panel decision is "novel" for finding the dominion-and-control provision overbroad, Pet_17, citing *United States v. Shi*, 525 F.3d 709 (9th Cir. 2008). But it does not explain why *Shi* is supposedly a contrary decision, and the case had nothing to do with temporal limitations, contrary to the Government's suggestion.

The Government's few other authorities supposedly "reject[ing] arguments like Holcomb's," also cited but not discussed, are equally irrelevant. Pet_17–18. *United States v. King*, 985 F.3d 702 (9th Cir. 2021), did not address a dominion-and-control provision. In *United States v. Johnston*, 789 F.3d 934, 942 (9th Cir. 2015), "Johnston did not challenge the scope or legality of the warrant." And in

10

*United States v. Schesso*, 730 F.3d 1040 (9th Cir. 2013), Schesso did not argue that the lack of a date limit made the warrant overbroad. *See* AB_24.[1]

Significantly, the panel decision expressly avoids creating a general rule "that the Government must always exercise time-limited warrant provisions in a particular way," or that it is always required to use date and time filters during a computer search. 132 F.4th at 1131 n.8. But in this particular case, the Government conceded there is not "any meaningful limitation on the scope of the dominion and control provision"; it covers every file on the computer, thereby rendering the carefully defined time limits in the rest of warrant irrelevant and turning it into an unconstitutional general warrant. *Id.* at 1128. This is the very "exploratory rummaging" the Fourth Amendment does not allow. *United States v. SDI Future Health Inc.*, 568 F.3d 684, 705 (9th Cir. 2009). It strains credulity that any officer would believe rummaging was permissible, where dominion-and-control evidence was not relevant to the investigation; there was no probable cause to search for it; and the police had already found irrefutable exculpatory evidence and knew the case was being dismissed.

---

[1] While these cases may have approved warrants that happened to contain dominion-and-control provisions, issues that "merely lurk in the record" do not create precedent, and no reasonable officer could rely on them for something they never discussed. *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022).

The Government does not dispute that Neufeld had forensic software to separate files "covered under the time constraints" of the rest of the warrant, ER-138, as had been used when searching Holcomb's cellphone. Neufeld's decision to instead exercise "unfettered discretion," 132 F.4th at 1129, to search all the data is simply another fact undermining good faith. *See United States v. Comprehensive Drug Testing, Inc*., 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc), *overruled in part on other grounds as recognized by Demaree v. Pederson*, 887 F.3d 870, 876 (9th Cir. 2018) (per curiam) ("[T]he process of segregating electronic data that is seizable from that which is not must not become a vehicle for the government to gain access to data which it has no probable cause to collect."); *United States v. Adjani*, 452 F.3d 1140, 1149 (9th Cir. 2006) ("[G]iven the vast amount of data" stored on computers, a "heightened" specificity requirement applies "in the computer context").

The Government's claim that "the good faith holding diverges from precedent" is equally vague and meritless. Pet_16. It complains that much of the panel's opinion is "merely a restatement of Fourth Amendment overbreadth doctrine," Pet_ 19, as if the fundamental nature of the constitutional violations somehow makes the good-faith exception more applicable. And well-established precedent makes those violations quite clear. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("general statements of the law are not inherently incapable of giving

fair and clear warning, and...a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful") (cleaned up).

While the Government attempts to characterize *Kow* as "contrary" to the panel decision, Pet_20, the panel cited the decision correctly. In *Kow*, the Court invalidated a warrant that contained fourteen search provisions that "authorized the seizure of virtually every document and computer file," 58 F.3d at 427, which is exactly what the Government contends the dominion-and-control provision authorized here. The panel's decision was squarely in line with *Kow*'s rejection of good faith where, as here, the facts were time-limited but the warrant was not. 132 F.4th at 1134.

*Kow* explained in particularly apt language: "The government did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place, even though [the] affidavit indicates that the alleged criminal activity began relatively late in HK Video's existence." 58 F.3d at 427 (footnote omitted). As in this case, *Kow* held that the affidavit failed to "establish the probable cause required to justify the widespread seizure of documents authorized by the warrant[.]" *Id.* Accordingly, the Court declined to apply the good-faith exception for essentially the same reasons the panel did so here. *Id.* at 428–29.

13

The Government asserts en banc review is needed to correct "the panel's error" in relying, in part, on *SDI*. Pet_21. But in *SDI* the Court invalidated five categories of a warrant similar to the one at issue here. The Court explained that one provision in particular, authorizing search and seizure of "[r]olodexes, address books and calendars," was "the laziest of gestures in the direction of specificity" because this category "practically begs the search team to find and to seize the contact information of every person who ever dealt with SDI." 568 F.3d at 705. The Court found these provisions so overbroad that the good-faith exception could not apply. Far worse here, the dominion-and-control category invited Neufeld to exercise unfettered discretion not just as to a single category, but every single file. *See also, e.g.*, *United States v. Spilotro*, 800 F.2d 959, 964 (9th Cir. 1986) (finding warrant overbroad, and rejecting good-faith exception, where warrant "authorize[d] wholesale seizures of entire categories of items not generally evidence of criminal activity").

### C. The government's other attempts to establish good faith fail.

While the Government recites other points of disagreement with the panel, none have merit or warrant en banc review. For example, the Government contends the warrant's approval by a state judge is evidence of good faith. But every good-faith claim involves a judge's signature; the question here is whether

14

probable cause was so lacking, or the warrant was so overbroad, that a reasonable officer could not rely on it. Pet_16, 22.

Moreover, reading the warrant and affidavit in their entirety, it unsurprisingly appears the issuing judge did not intend to approve a general warrant, and any dominion-and-control search should have been executed the same way as the cellphone search—"under the time constraints of [the] search warrant." ER-138. *See Andresen v. Maryland*, 427 U.S. 463, 479–83 (1976) (to prevent a warrant clause from creating an unconstitutional general warrant, it should be construed in a manner consistent with other parts of the warrant to authorize a properly limited search).

But even if the judge had approved an unlimited dominion-and-control provision, it would not help the Government, in light of the repeated pronouncements from this Court that bar warrants effectively encompassing all records (or even broad categories narrower than in this case), absent particular types of showing not relevant here. *See, e.g.*, *SDI*, *supra*, at 14; *Kow*, 58 F.3d at 428 (no good faith where warrant "encompass[ed] essentially all documents on the premises"); *Spilotro*, 800 F.2d at 964 (no good faith where warrant "authorize[d] wholesale seizures of entire categories of items not generally evidence of criminal activity"). The lack of any "meaningful limitation" puts the panel's decision squarely in line with these cases. 132 F.4th at 1128.

15

Nevertheless, the Government also suggests the police acted in "good faith" because they "worked closely with a state prosecutor." Pet_16. *Contra Kow*, 58 F.3d at 428 (no good faith despite review by two AUSAs); *United States v. Dozier*, 844 F.2d 701, 708 (9th Cir. 1988) (same despite review by AUSA). Here, working closely with the prosecutor meant Neufeld knew JJ's complaint had been discredited and the prosecutor was dismissing the charges, but he continued searching anyway. Even the state prosecutor could not "think of ANY legitimate argument" to justify that search, a fact that hardly helps the Government. ER-157.

Finally, the Government argues that, even if a warrant meets one of *Leon*'s four situations where good faith does not apply, this Court must also conduct a case-specific balancing of suppression's costs and benefits. Pet_18. But the Supreme Court has never held this and, as the district court recognized, "*Leon*'s good-faith test already incorporates this balance." ER-15. The cases cited by the Government, Pet_18, do not say otherwise. None support the contention that *Leon*'s holding on how to apply good faith has, *sub silentio*, been altered. *See Herring v. United States*, 555 U.S. 135 (2009) (involving reliance on recalled warrant, not a deficient one); *Davis v. United States*, 564 U.S. 229 (2011) (no warrant at issue). *United States v. Artis*, 919 F.3d 1123, 1133–34 (9th Cir. 2019), Pet_21, did not concern a warrant found to meet one of these four situations. It

addressed when fruits of a prior Fourth Amendment violation not involving a warrant should be stricken from an affidavit.

## II. The disagreements noted in the partial concurrence are factual, the panel decision was correct, and no evidentiary hearing is needed to conclude the search cannot be justified under the warrant's other provisions.

Judge Sung agreed it was unconstitutional for the police to continue searching Holcomb's computer pursuant to the dominion-and-control provision. Her disagreement on the issue of waiver is fact-bound and case-specific, not warranting en banc review.

Notably, the Government makes no effort to show error in the majority's finding of waiver. *See* Pet_27 (while asserting "the dominion-and-control provision is severable," it never addresses waiver). And it's not surprising the Government doesn't argue about severance; because Neufeld's search following the dismissal decision was outside the warrant's express time-limited provisions, the Government has focused on the dominion-and-control provision to try to justify that search. And since the majority is correct about waiver, the severability and plain-view questions are moot.

Regardless, Judge Sung's suggestion that the plain-view exception might apply, and that more facts may be needed to determine this, is a factual disagreement not meriting en banc review. As to speculation that the police might have found the incriminating video pursuant to the video provision, the district

17

court found the search could only have been conducted pursuant to the dominion-and-control clause, ER-40, as did the panel. 132 F.4th at 1130. The claim that Neufeld was looking for more videos of Holcomb and JJ was a post-hoc rationalization, written months after the search. ER-143. The record is clear the police knew they had found the video of the encounter JJ had described and that it refuted her complaint.

Likewise, "protocol" used during the search has never been an issue, although the record establishes Neufeld simply "pulled up all videos" and "just scroll[ed] through them." ER-157. And the Government does not dispute the panel's factual finding that "the file dates and metadata were readily ascertainable[.]" *Id.* at 1137.

In short, no additional facts were needed to decide this case. It avails the Government nothing to argue, despite its waiver, that other warrant provisions might have applied.

**III.    The search was invalid and not subject to good faith for an additional reason not addressed by the panel: once officers viewed the exculpatory video, probable cause had so diminished they had to stop searching, absent further judicial authorization.**

Supreme Court and Ninth Circuit law require officers to stop executing a search warrant if facts subsequently arise that dissipate probable cause. OB_26–32 (citing, *e.g.*, *United States v. Grubbs*, 547 U.S. 90 (2006)). The warrant affidavit relied entirely on JJ's statements to establish probable cause. Once those

statements were discredited, there was no longer probable cause and officers were required to cease searching absent further judicial authorization. OB_32–34. The good-faith exception cannot rescue this independent Fourth Amendment violation. OB_34–36.

## CONCLUSION

There was no showing of probable cause to search for dominion-and-control evidence, and this Court's precedents establish that the good-faith exception is inapplicable. In addition, the provision at issue here, as construed by the Government, has no limitations and is broader than others where the Court has found overbreadth and good faith inapplicable. Thus, there was no error, let alone error warranting en banc review.

Dated this 23rd day of July 2025.

s/ *Colin Fieman*
s/ *Alan Zarky*
Attorneys for John Holcomb

## CERTIFICATE OF COMPLIANCE

I am one of the attorneys of record. I certify that pursuant to Circuit Rule 40-1, the attached opposition to the petition for panel rehearing en banc is prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)–(6) and contains 4,199 words.

Dated this 23rd day of July 2025.

s/ *Colin Fieman*
Attorney for John Holcomb