# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff-Appellee,<br><br>v.<br><br>JOHN HOLCOMB,<br><br>        Defendant-Appellant. | No. 23-469<br><br>D.C. No. 2:21-cr-00075-RSL<br>Western District of Washington |

### UNITED STATES' RESPONSE TO DEFENDANT'S
### MOTION TO RECONSIDER DISPOSITIVE ORDER (Dkt. 70)

After withdrawing its opinion, the panel directed the United States to "transmit, under seal, three electronic copies of the videos described at [ER-142–43], as well as any additional video pertinent to the incident." Dkt. 69. The videos are chronological clips of surveillance-camera footage depicting sexual activities between Holcomb and J.J., a woman who reported that Holcomb abused her in two ways and filmed her without her consent. Holcomb opposes the Court's order. Dkt. 70.

Holcomb is correct that this video footage is not part of the record. Dkt. 70 at 2. But Holcomb's arguments for reversal in his reconsideration motion are misplaced and should be rejected—the arguments exceed the

scope of the Court's order, they ignore the district court's factual findings (ER-32–33, 36–37, 41 n.8), and they depend on a novel and unsupported theory of dissipation.

**1. The J.J. video clips are not part of the record**

This video footage is not part of the record on appeal. The United States made the footage available to Holcomb below, but he chose not to file any of these video clips as exhibits to his district court pleadings. Instead, Holcomb relied on local law enforcement's written descriptions of certain video clips, arguing that those descriptions established that law enforcement lacked probable cause to continue searching Holcomb's computer after they watched the clips described.

The district court rejected Holcomb's argument, finding that the record showed that the clips viewed by the police and county prosecutor during the warranted search in the adult-rape investigation were not so exculpatory that the search had to end. ER-36–37 & n.5; *see* ER-41 n.8.

It is a fair inference that Holcomb would have included this video footage below if he believed it made his case for suppression stronger. But in any event, the footage is not part of the record because of Holcomb's

strategic decisions in district court. *See* Fed. R. App. P. 10(a).[1] The United States knows of no basis in Rule 10 for supplementing the record on appeal to include this footage. For example, no omission occurred "by error or accident." Fed. R. App. P. 10(e)(2).

In "extraordinary cases," this Court sometimes supplements the record under its "inherent authority." *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003) (citing *Dickerson v. Alabama*, 667 F.2d 1364, 1366–68 & n. 5 (11th Cir. 1982)); *see* Dkt. 70 at 3 (citing *Lowry*). "Whether an appellate record should be supplemented under the particular circumstances of a case is a matter left to the discretion of the federal courts of appeals." *Dickerson*, 667 F.2d at 1367. This Court has done so when it was "'in the interests of justice and efficiency.'" *Teamsters Loc. Union No. 117 v. Wa. Dep't of Corrs.*, 789 F.3d 979, 986 (9th Cir. 2015) (citation omitted); *see also, e.g.*, *United States v. Karadimos*, 479 F. App'x

---

[1] The United States also could have attached the videos to its pleadings opposing suppression. But that does not lead to an inference that the videos might support Holcomb's dissipation argument, for at least three reasons. First, Holcomb had the burden to show dissipation. Second, his dissipation argument lacked legal support and was not a significant focus of his briefing in the district court. And third, the videos were at least partly cumulative of the written descriptions and were sensitive given that they were made without J.J.'s consent in likely violation of Washington law.

144, 144 (9th Cir. 2012) (supplementing the record with discovery and citing *Lowry,* 329 F.3d at 1024).

Especially given the party-presentation principle, *see United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020), this does not seem to be an extraordinary case in which the Court should supplement the record with material that was available to Holcomb in district court. Instead, Holcomb's conviction can and should be affirmed on the existing record; there is no room on that record to hold that the district court clearly erred when it found that law enforcement continued to have probable cause to believe that Holcomb raped J.J. after they viewed the video clips. But if the Court orders the United States to transmit these video clips to the Court, the United States stands ready to do so.[2]

---

[2] Holcomb's motion suggests that it is impossible to determine which video clips Skagit County law enforcement viewed during the computer search. Dkt. 70 at 4. But a detective's notes about the forensic examiner's report lists the time the encounter begins ("1956 hours" or 7:56 pm) and ends ("2355 hours" or 11:55 pm) when J.J. "says 'I'm done', gets up and then leaves the room." ER-142. Timestamps are visible in the video clips. The record shows that the examiner watched from timestamps "1956 hours" to "2355 hours." *Id.* The examiner concluded that details of the sexual encounter in the footage that ends at 2355 hours "matched what [J.J.] had reported" with "the exception of having been forcibly restrained during fellatio." *Id.* The examiner thought it looked as if J.J. was "fully participating" and did not look as if Holcomb was forcing
(continued . . .)

**2. Holcomb's arguments about the video footage lack merit, and the district court correctly rejected them**

Holcomb's arguments about the J.J. video footage (Dkt. 70 at 3–4) are meritless, for reasons detailed by the United States and the district court. Answering Br. 46–53 (Dkt. 26); ER-36–37, 41 n.8; SER-98–100.

First, Holcomb suggests that the footage is entirely exculpatory and that the government conceded as much. *See* Dkt. 70 at 3–4. Not so. As the United States explained in its answering brief (at 46–53) and the

---

J.J.'s head down during the act of fellatio in the footage that ends at 2355 hours (both debatable assessments). ER-142. But the examiner thought the rest of the footage was consistent with or confirmed different components of J.J.'s rape allegations. The examiner observed that J.J. pulled away from Holcomb at the end of the encounter, saying "I'm done" (consistent with J.J.'s allegation that she had to pull away from Holcomb, who had his hands on her head, and insist she was done); that the surveillance footage showed Holcomb taking "4 photos of [J.J.] and also two small video clips with his phone" (tending to confirm J.J.'s report that Holcomb filmed her without her consent and then coerced her with the videos); and that Holcomb "does reach his left hand around to touch her butt" (consistent with J.J.'s report that Holcomb put a finger in her anus without her consent and caused her "great pain of 8 on a scale of 1-10 with 10 being the most severe pain"). ER-85, 91, 99–100, 129–130, 142. The next day, the forensic examiner played "a few of the videos" for the lead detective and the county prosecutor. ER-143; *see* ER-32. The record shows that the "last video clip" the examiner played for the lead detective and the county prosecutor was the clip that "ends at 2355 hours." ER-143. The examiner was then "advised to continue processing the other hard drives as per standard procedures and to continue looking for additional surveillance videos or angles that may be present." ER-143; *see* ER-33, 36–37, 41 n.8; SER-216.

5

district court found (ER-36–37, 41 n.8), the footage was not so exculpatory as to eliminate probable cause and require the police to stop this warranted search for relevant surveillance videos and images. And as just noted, Holcomb presumably would have made this footage part of the record below if it supported his argument. He elected not to.

Nor did the police or the Skagit County prosecutor regard this video footage as exonerating Holcomb—not while this search was ongoing or even afterward. The forensic examiner thought the video clips he watched mostly aligned with J.J.'s account. ER-142. Plus, law enforcement knew from the investigation that there could be videos of multiple sexual encounters from the same night—some consensual—and that there could be videos saved on Holcomb's desktop, laptop, and cellphone showing different angles from this encounter and potentially revealing Holcomb's abuse of J.J. or her lack of consent. *See, e.g.*, ER-90, ER-97–100, 129–134, 142–143. Law enforcement also knew that sexual assault is not limited to cases of forcible compulsion; questions of consent are more complicated than that. Continuing this warranted search—and "looking for additional surveillance videos or angles that may be present" (ER-143)—was consistent with the Fourth Amendment.

In fact, even after this search was done and the adult-rape charges against Holcomb were dismissed, the county prosecutor did not regard the J.J. videos as exonerating Holcomb. The county prosecutor had "reviewed some of the evidence obtained, in the very early stages of the search" (ER-151), when "the search had not been completed" (ER-152). He compared that evidence "with the statement made by the complaining witness and found that it raised a legitimate question as to the credibility of the complaining witness' statement." ER-151. Ultimately, the county prosecutor "elected not to move forward with [adult-rape] charges against Mr. Holcomb at that time" but dismissed those charges "without prejudice, which means charges could be refiled should additional information come to light." *Id.* The incident involving J.J. was "still under investigation." ER-152.

This record amply supports the district court's finding that "Skagit County law enforcement did not consider the surveillance video to be as patently exculpatory as defendant asserts" (ER-37), especially considering that the county prosecutor dismissed the adult-rape charges without prejudice. The district court's finding is certainly not clearly erroneous. "'Where there are two permissible views of the evidence, the

7

factfinder's choice between them cannot be clearly erroneous.'" *United States v. Barlow*, 83 F.4th 773, 780 (9th Cir. 2023) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985)).

The district court also concluded that neither Holcomb nor his amici cited any authority that would have required police "to stop the search for lack of probable cause upon viewing the surveillance video." ER-36 n.5; *see* ER-36–37 (concluding that the case cited by Holcomb, *United States v. Loera*, 923 F.3d 907 (10th Cir. 2019), "does not indicate that an officer must cease executing a search warrant in accordance with its terms based on what officers discover"). "Considering the evidence and arguments before" it, the district court correctly concluded that "Skagit County law enforcement was not required to cease its warranted search immediately upon viewing the surveillance video." ER-37.

In his reconsideration motion (Dkt. 70 at 4), Holcomb continues to rely on inapt authority. Neither *United States v. Perkins*, 850 F.3d 1109 (9th Cir. 2017), nor *United States v. Ortiz-Hernandez*, 427 F.3d 567 (9th Cir. 2005) (per curiam), involved circumstances anything like the search here, and neither case remotely supports Holcomb's dissipation claim. *Perkins* is not a dissipation or search-execution case. That factbound

8

decision concerned *Franks* violations in an application for a search warrant involving "a suspected 'lascivious' image." 850 F.3d at 1122–23. As for *Ortiz-Hernandez*, it stands for the principle that a "person may not be arrested, or must be released from arrest, if previously established probable cause has dissipated." *Id.* at 574. There, a strip-search of a suspected drug dealer confirmed to police that he "had no drugs, no drug paraphernalia, and no other evidence of drug sales on his person"—yet police conducted an illegal warrantless arrest anyway. *Id.* at 574–75. *Ortiz-Hernandez* has nothing to say about the completion of a search of digital devices for evidence covered by an undisputedly valid provision in a search warrant (here, the "surveillance video or images" provision).

But even if some part of the J.J. video clips dissipated probable cause in this adult-rape investigation to such a degree that this search should have ended, the good-faith exception would still foreclose suppression. Holcomb identifies no precedent clearly establishing that a search must stop under circumstances like those here. And there remained at least a "colorable argument" for probable cause. *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007). So the exclusionary rule cannot apply. *See Davis v. United States*, 564 U.S. 229,

9

238 (2011) (suppression unavailable "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful" (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984))).

Finally, contrary to Holcomb's suggestion (Dkt. 70 at 4), the exclusionary-rule analysis here does not turn on the validity of the warrant's "dominion and control" provision. The United States has explained why in its en banc petition (Dkt. 59) and answering brief (Dkt. 26): Police discovered Holcomb's child-rape videos in plain view while executing a different and undisputedly valid provision of the warrant that authorized seizure of "[s]urveillance video or images depicting [J.J.] or JOHN HOLCOMB and any other surveillance video or images from Jan 26th 2020 to current." ER-76–77, 125–26. And the good-faith exception forecloses suppression regardless.

September 23, 2025

          Respectfully submitted,

          TEAL LUTHY MILLER
          *s/ Teal Luthy Miller*
          Acting United States Attorney

          *s/ Jonas Lerman*
          JONAS LERMAN
          MATTHEW HAMPTON
          Assistant United States Attorneys